UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>and )<br>)<br>STATE OF OHIO, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE CITY OF TOLEDO, OHIO )<br>)<br>Defendant. ) | Civil Action No.    3:19-cv-00601 |

**CONSENT DECREE WITH CITY OF TOLEDO, OHIO
REGARDING OTTAWA RIVER ASSESSMENT AREA NATURAL RESOURCE
DAMAGES**

<u>TABLE OF CONTENTS</u>

I.      BACKGROUND……………………………………………………….....................1
II.     JURISDICTION…………………………………………………………………4
III.    PARTIES BOUND………………………………………………………………4
IV.     DEFINITIONS……………………………………………………………………..5
V.      STATEMENT OF PURPOSE…………………………………………………..11
VI.     RESTORATION PROJECT……………………………………………………11
VII.    REVIEW AND APPROVAL OF WORK PLANS AND
        OTHER SUBMISSIONS……………………………………………………..17
VIII.   PAYMENTS FOR PAST ASSESSMENT COSTS, RESTORATION
        ACTIVITIES, AND OVERSIGHT OF NATURAL RESOURCE
        RESTORATION ACTIVITIES…………………………………………………19
IX.     ACCESS TO RESTORATION PROPERTIES; INFORMATION
        AND DOCUMENT RETENTION……………………………………………22
X.      INDEMNIFICATION……………………………………………………………24
XI.     FORCE MAJEURE………………………………………………………...25
XII.    DISPUTE RESOLUTION………………………………………………………27
XIII.   STIPULATED PENALTIES……………………………………………………30
XIV.    COVENANTS BY PLAINTIFFS………………………………………………35
XV.     RESERVATION OF RIGHTS BY PLAINTIFFS………………………………36
XVI.    COVENANTS BY THE CITY…………………………………………………38
XVII.   EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION……………………...39
XVIII.  NOTICES AND SUBMISSIONS........................................................40
XIX.    TERMINATION.....................................................................41
XX .    PUBLIC COMMENT……………………………………………………………42
XXI.    EFFECTIVE DATE AND RETENTION OF JURISDICTION…………………………43
XXII.   APPENDICES……………………………………………………………………43
XXIII.  CONSENT DECREE MODIFICATIONS…………………………………………43
XXIV.   SIGNATORIES/SERVICE………………………………………………………44
XXV.    FINAL JUDGMENT…………………………………………………………45

# I.   BACKGROUND

A.      The United States of America (the "United States") on behalf of the Secretary of the United States Department of the Interior ("DOI"), and the State of Ohio (the "State"), by and through the Ohio Attorney General, Michael DeWine, on behalf of and at the request of the Ohio Environmental Protection Agency ("Ohio EPA") (collectively the "Plaintiffs"), filed a Complaint asserting claims under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607, and Section 311 of the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1321, commonly known as the Clean Water Act ("CWA"), seeking damages for injury to, destruction of, or loss of natural resources belonging to, managed by, held in trust by, controlled by, or appertaining to the United States and/or the State, resulting from releases of hazardous substances into or which have migrated into the Ottawa River Assessment Area, including the costs of assessing such injury, destruction, or loss.

B.      The Complaint filed by Plaintiffs herein allege that natural resources, including but not limited to, fish, invertebrates, migratory birds, water and sediments, have been injured and that the public has suffered the loss of natural resource services, including lost recreational fishing, bird watching, boating, and passive human use losses such as provided by parks, waterways, and a healthy ecosystem, as a result of releases of hazardous substances to the Ottawa River Assessment Area from various facilities in or near Toledo, Ohio.  The Complaint also alleges that Plaintiffs have incurred costs in connection with the assessment of such injuries, destruction or losses.  The Complaint alleges that hazardous substances, including, but not limited to, polychlorinated biphenyls ("PCBs"), polycyclic aromatic hydrocarbons ("PAHs"), chlorinated benzenes**,** hexachlorobenzene, dichlorodiphenyltrichloroethane ("DDT"),

dichlorodiphenyl-dichloroethylene ("DDE"), dieldrin, endrin, heptachlor, chlordane, endosulfan, lead, silver, chromium, selenium, cadmium, and mercury have been detected in the sediments, surface water, and fish of, and wetlands connected to, the Ottawa River Assessment Area.

C.     The Complaint further alleges that the Defendant, the City of Toledo, Ohio (the "City"), is liable for damages for injury to, destruction of, or loss of natural resources within the Ottawa River Assessment Area because the City is an owner and operator of one or more facilities from which such releases occurred and were owners and operators of one or more such facilities at a time hazardous substances were disposed at such facilities.

D.     The City does not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the Complaint.  By entering into this Consent Decree, undertaking the obligations imposed under its terms, and making the payments required by its terms, the City does not expressly, or by implication, admit liability for damages for injury to, destruction of, or loss of natural resources in the Ottawa River Assessment Area as alleged in the Complaint or otherwise.

E.     Pursuant to Executive Order 12580 and the National Contingency Plan, 40 C.F.R. Part 300 (the "NCP"), DOI through the United States Fish and Wildlife Service ("FWS"), has been delegated authority to act as federal Trustee for natural resources impacted by the releases of hazardous substances into or within the Ottawa River Assessment Area.  Ohio EPA has been delegated authority to act as the State Trustee for natural resources injured by such releases of hazardous substances.

F.     FWS and Ohio EPA (collectively, the "Trustees") share trusteeship of the injured Natural Resources.  Pursuant to 43 C.F.R. Part 11, the Trustees conducted an assessment of injuries to Natural Resources resulting from the release of hazardous substances into or within

the Ottawa River Assessment Area. The Ottawa River begins southeast of Sylvania, Ohio at the junction of Ten Mile Creek and North Ten Mile Creek. From there it flows, generally southeast, through the City of Toledo, to Maumee Bay (Lake Erie). Beginning in the 1940's, decades of manufacturing activity and waste disposal practices resulted in the release of hazardous substances to the Ottawa River and its watershed. Hazardous substances migrated from landfills along the banks of the Ottawa River and from industrial facilities in the watershed, contaminating water, fish and wildlife in the Ottawa River Assessment Area.

G. The Trustees published their June 4, 2007 Natural Resource Damage Assessment Plan ("Assessment Plan") and solicited public comments. The Assessment Plan describes the proposed approach for determining and quantifying natural resource injuries and calculating damages associated with those injuries. On March 4, 2016, the Trustees issued and solicited public comment on their draft Restoration Plan and Environmental Assessment as provided for under 43 C.F.R. §11.82. A public meeting was held on April 7, 2016. After receiving and responding to public comments, on August 4, 2016, the Trustees approved the final version of the Restoration Plan and Environmental Assessment (the "Ottawa River Restoration Plan") dated June 27, 2016, which is attached to this Consent Decree as Appendix C.

H. In order to facilitate more expeditious restoration of natural resources the City has begun consolidating and acquiring parcels that will be part of the Manhattan Marsh Property (defined below), which is identified in the Ottawa River Restoration Plan as a property to be restored.

I. The United States, the State, and the City (collectively, the "Settling Parties" to this Consent Decree) recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Settling Parties in good faith, that implementation of

this Consent Decree will avoid prolonged and complicated litigation among the Settling Parties, and that this Consent Decree is fair, reasonable, consistent with applicable law, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without adjudication of any issue of fact or law, except as provided in Section II (Jurisdiction), and with the consent of the Parties, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b). The Court also has personal jurisdiction over the Parties. Venue lies in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (e), because the releases and injuries alleged in the Complaint occurred within this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. For the purposes of this Consent Decree, or any action to enforce this Decree, the City consents to this Court's jurisdiction over this Decree and any such action and over the City, as well as venue in this district.

## III. PARTIES BOUND

2.      The obligations of this Consent Decree apply to and are binding upon the United States, the State, and the City, and any successors, assigns or other persons otherwise bound by law. No change to the corporate status of the City or ownership of its assets, including, but not limited to, any transfer of assets or real or personal property, shall relieve the City of its obligation to ensure that the terms of the Decree are implemented.

3.      Reserved.

4.      The City shall provide a copy of this Consent Decree to each contractor hired to perform the restoration work required by this Consent Decree and to each person representing the City with respect to the Manhattan Marsh Restoration Project and shall condition all contracts entered into hereunder upon performance of the Manhattan Marsh Restoration Project in conformity with the terms of this Consent Decree.  The City or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Manhattan Marsh Restoration Project required by this Consent Decree.  The City shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the restoration work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the City within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.   DEFINITIONS

5.      Unless otherwise expressly provided herein, the terms used in this Consent Decree that are defined in the CWA, CERCLA, the National Contingency Plan (40 C.F.R. Part 300), or the DOI Natural Resource Damage Assessment and Restoration Regulations, 43 C.F.R. Part 11, shall have the meaning assigned to them in such statutes or regulations.  Whenever terms listed below are used in this Consent Decree or in the Appendices attached hereto and incorporated hereunder, the following definitions shall apply:

a.      "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. § 9601 *et seq*.

b.      "City" means the City of Toledo, Ohio.

c.　　"Consent Decree" or "Decree" means this Consent Decree and all Appendices attached hereto, as well as all plans, reports or other items or deliverables approved by the Trustees pursuant to this Consent Decree.  In the event of a conflict between this Consent Decree and any Appendix hereto, or any plan, report or other item or deliverable approved by the Trustees pursuant to this Consent Decree, this Consent Decree shall govern.

d.　　"Cooperative Management Agreement" means an agreement between the City and FWS regarding a portion of the Toledo Low Service Pump Station Property (defined below), attached hereto as Appendix D,

e.　　"CWA" means the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251 et seq., also known as the Clean Water Act.

f.　　"Day" means a calendar day unless expressly stated to be a Working Day. "Working Day" means a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next Working Day.

g.　　"Dike Property" means a portion of the Toledo Low Service Pump Station Property (defined below) that contains a dike, which continues onto the adjacent Cedar Point National Wildlife Refuge, as depicted in Appendix H, in the color turquoise.

h.　　"DOI" means the United States Department of the Interior and any successor departments or agencies of the United States.

i.　　"Effective Date" means the effective date of this Consent Decree as provided by Section XXII (Effective Date and Retention of Jurisdiction) of this Consent Decree.

j.　　　"FWS" means the U.S. Fish and Wildlife Service of the United States Department of the Interior.

k.　　　"GLLA Project" means the project undertaken pursuant to the Great Lakes Legacy Act of 2002 ("GLLA"), as amended, 33 U.S.C. § 1268, to dredge and dispose of the contaminated sediment of the Ottawa River from River Mile 3.2 (at Secor Road) to River Mile 8.8 (at Auburn Road), and Sibley Creek, as described more particularly in the "Project Cooperation Agreement between the United States Environmental Protection Agency and the ORG" entered into on January 26, 2009.

l.　　　"Interest" means interest accruing at the rate established pursuant to 28 U.S.C. § 1961.

m.　　　"Lodging Date" means the date on which this Consent Decree is lodged with the Court.

n.　　　"Manhattan Marsh Property" means those properties described in Appendix E composed of a minimum of 50 acres that will be owned by the Metroparks and is currently owned by Metroparks, the City, or other landowners.

o.　　　"Manhattan Marsh Restoration Project" means restoration of the Manhattan Marsh Property through controlling invasive plant species within the marsh area, planting native species within the upland marsh, installing nest boxes where appropriate, adding or improving existing water control structure where appropriate, and removing trash and debris from the entire property, all of which is more fully described in the Ottawa River Restoration Plan, attached hereto as Appendix C and the Manhattan Marsh Statement of Work, attached hereto as Appendix B.

p.     "Metroparks" means the Metropolitan Park District of the Toledo Area, a park district located within Lucas County, Ohio, created in accordance with Ohio law, and approved by Probate Judge O'Brien O'Donnell on August 1, 1928.

q.     "Natural Resources" shall mean land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States or the State.

r.     "Natural Resource Damages" shall mean any damages recoverable by the United States or the State, as Trustees or parens patriae on behalf of the public, under Section 107(a)(4) of CERCLA, 42 U.S.C. §9607(a)(4), Section 311(f)(4) or (f)(5) of the Clean Water Act, 33 U.S.C. §1321(f)(4)  or (f)(5), or state law, as compensation for injury to, destruction of, loss of, or loss of use of Natural Resources and natural resource services they provide, resulting from a release or a threat of release of hazardous substances into, or which has migrated into, the Ottawa River Assessment Area on or before the Lodging Date.  Natural Resource Damages includes, without limitation:  (i) Natural Resource Damage Assessment Costs; (ii) the cost of restoration, rehabilitation, or replacement of injured or lost Natural Resources and natural resource services, or of acquisition of equivalent resources; (iii) the costs of planning and monitoring such restoration activities; and (iv) any other compensation for diminution in value or loss of use or non-use values of Natural Resources resulting from the releases or threats of releases of hazardous substances.

s.     "Natural Resource Damage Assessment Costs" shall mean the direct and indirect costs within the meaning of 43 C.F.R. §11.53(a)(3) and (4), incurred by the Trustees, including, but not limited to, direct, indirect, and administrative costs in assessing the alleged injury to, destruction of, loss of, or loss of use or non-use values of Natural Resources resulting

from the releases or threats of releases of hazardous substances into, or which have migrated into, the Ottawa River Assessment Area.

t.      "NRDAR Fund" means the DOI Natural Resource Damage Assessment and Restoration Fund, established pursuant to 43 U.S.C. §§1474b and 1474b-1.

u.      "Ohio EPA" means the Ohio Environmental Protection Agency and any successor departments or agencies of the State of Ohio.

v.      "Ottawa River Assessment Area" means (1) all waters, sediments, shorelines, connected wetlands, and natural resources of the Ottawa River primarily located in Lucas County, Ohio, from River Mile 8.8 to River Mile 0.0, at the mouth of the Ottawa River, and (2) Sibley Creek.  This Area is depicted on the Map attached as Appendix A.

w.      "Oversight Costs" means the reasonable direct and indirect costs to be incurred by the Trustees, as defined in 43 C.F.R. §11.15(a)(3), in the monitoring of the Restoration Projects contemplated by this Consent Decree.  Such costs shall include reasonable administrative costs and other costs or expenses recoverable under 43 C.F.R. §11.15(a)(3) to be incurred to provide for, carry out, or support the activities or responsibilities of the Trustees consistent with this Consent Decree including their attorneys, in overseeing the implementation of the Restoration Projects.

x.      "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

y.      "Parties" means the United States, the State, and the City.

z. "Past Assessment Costs" means the assessment costs that the Trustees have incurred in connection with the Ottawa River Assessment Area on or before the Lodging Date of this Consent Decree.

aa. "Plaintiffs" means the United States and the State.

bb. "Restoration Projects" means the Manhattan Marsh Restoration Project and the Toledo Low Service Pump Station Restoration Project.

cc. "Section" means a portion of this Consent Decree identified by a Roman numeral.

dd. "Settling Parties" means the United States, the State, and the City.

ee. "State" or "State of Ohio" means the State of Ohio on behalf of Ohio EPA.

ff. "Toledo Low Service Pump Station Property" or "Pump Station Property" means that real property, located at 1002 North Yondota Road, town of Curtice, Lucas County, Ohio with coordinates of 41.674197 latitude and 83.309728 longitude. The Pump Station Property comprises approximately 58 acres and is adjacent to the Cedar Point National Wildlife Refuge.

gg. "Toledo Low Service Pump Station Restoration Project" or the "Pump Station Restoration Project" means restoration of the Pump Station Property in accordance with the Cooperative Management Agreement between FWS and the City, conveying the Dike Property in fee simple to the United States, and providing fifty thousand dollars ($50,000.00) to FWS for FWS to conduct restoration on the Pump Station Property consistent with the Ottawa River Restoration Plan.

hh.  "Trustees" means DOI and Ohio EPA.

ii.  "United States" means the United States of America, including all of its departments, agencies and instrumentalities, including, without limitation, DOI and FWS.

## V.  STATEMENT OF PURPOSE

6.  The mutual objectives of the Settling Parties in entering into this Consent Decree are:  (i) to provide for the restoration, replacement, or acquisition of the equivalent of the natural resources allegedly injured, destroyed, or lost as a result of releases of hazardous substances into or within the Ottawa River Assessment Area through implementation of the City's responsibilities under the Pump Station and Manhattan Marsh Restoration Projects (the "Restoration Projects") consistent with this Consent Decree, the Manhattan Marsh Restoration Statement of Work, and the work plan for the Manhattan Marsh Restoration Project once approved by the Trustees; (ii) to reimburse Past Assessment Costs incurred, restoration costs to be incurred by FWS for the Pump Station Restoration Project, and future Oversight Costs to be incurred by the Trustees, as provided herein; (iii) to resolve potential liability among the Settling Parties with respect to Natural Resource Damages as provided herein, without determining any other rights, claims, or obligations of any parties; and (iv) to avoid costly and time-consuming litigation.

## VI.  RESTORATION PROJECTS

7.  The City shall implement the Pump Station and Manhattan Marsh Restoration Projects in accordance with the provisions set forth below in this Section VI.

8.  The City shall, within 120 days after the Effective Date, develop and submit to the Trustees for approval in accordance with the Manhattan Marsh Restoration Statement of Work (attached hereto as Appendix B), and the provisions of Section VII (Review and Approval

of Work Plan and Other Submissions), the Manhattan Marsh Restoration Work Plan (the "Restoration Work Plan").  The City shall provide in the Restoration Work Plan detailed descriptions of the activities it proposes to undertake on the Manhattan Marsh Property to restore, in part, the equivalent of natural resources that the Trustees allege were injured as a result of releases of hazardous substances into or within the Ottawa River Assessment Area, together with proposed schedules to implement such activities and future maintenance of the Manhattan Marsh Property.  The Restoration Work Plan shall be consistent with the Ottawa River Restoration Plan.

Project Implementation

9.      Upon approval of the Restoration Work Plan submitted pursuant to Paragraph 8, above, the City shall commence and complete the restoration work described in the Restoration Work Plan in accordance with the terms and schedules therein.  All such work shall be performed in accordance with the Ottawa River Restoration Plan, the Manhattan Marsh Restoration Statement of Work, the Restoration Work Plan, and the provisions of Paragraph 14, below.

Conveyance and Cooperative Management Agreement for Pump Station Property

10.      Within 60 days following the Effective Date, the City shall submit to the Trustees for approval in accordance with Section VII  (Review and Approval of Work Plan and Other Submissions) the following:

a.      a draft general warranty deed providing for conveyance of the Dike Property.  The Dike Property will be conveyed in fee simple, free and clear of liens and other encumbrances (except for encumbrances acceptable to the Trustees), to the United States and its assigns, Washington, D.C., with DOI, FWS as the acquiring federal agency, enforceable under

the laws of the State, and otherwise acceptable under the *Regulations of the Attorney General Governing the Review and Approval of Title for Federal Land Acquisitions (2016)* (the "*Attorney General's Title Regulations (2016)*") promulgated pursuant to 40 U.S.C. § 3111.

b.      a boundary survey and legal description of the Dike Property to be approved by the FWS Regional Land Surveyor prior to transfer.

c.      current title insurance commitments for the Dike Property and the Cooperative Management Agreement for the Pump Station Property without the Dike Property prepared in accordance with the *Attorney General's Title Regulations (2016)*, or which is otherwise acceptable to the Trustees.

d.      a draft Cooperative Management Agreement with FWS in substantially the same form as Appendix D, for the portion of the Pump Station Property that does not include the Dike Property.

11.      Within 60 days following the Trustees' approval of the draft general warranty deed and the Cooperative Management Agreement, the City shall:  (a) execute and deliver a general warranty deed in fee simple for the Dike Property, free and clear of liens and other encumbrances (except for encumbrances acceptable to the Trustees), to the United States of America and its assigns, Washington, D.C., with DOI, FWS as the acquiring federal agency along with a final title policy on the American Land Title Association ("ALTA") form U.S. Policy 9-28-91 (Revised 12-3-2012) with the United States of America and its assigns, Washington, D.C., as the insured; (b) execute and deliver the Cooperative Management Agreement to FWS along with a final title policy(s) on the American Land Title Association ("ALTA") form U.S. Policy 9-28-91 (Revised 12-3-2012) form for the Cooperative Management Agreement for the Pump Station Property not including the Dike Property with the United States

of America and its assigns, Washington, D.C., as the insured. The City shall ensure that the deed

for the Dike Property is properly recorded. Within 30 days following a request by the Trustees,

the City shall cause the title commitments for the Dike Property and the Cooperative

Management Agreement to be updated. The FWS intends to add the Dike Property to the Cedar

Point National Wildlife Refuge which is managed in accordance with, *inter alia*, the following:

(a) the September 2000 Ottawa National Wildlife Refuge Comprehensive Conservation Plan,

U.S. Fish and Wildlife Service, Region 3; (b) the National Wildlife Refuge System Improvement

Act (1997), 16 U.S.C. §§668dd and 668ee; and (c) the Ottawa National Wildlife Refuge

Complex Expansion and Detroit River International Wildlife Refuge Expansion Act, 117 Stat.

704, note following 16 U.S.C. § 668dd (2003). The transfer of the Dike Property shall be carried

out in accordance with, and the general warranty deed and final title policy on the ALTA U.S.

Policy 9-28-91 (Revised 12-3-2012) shall be prepared in accordance with, the *Attorney*

*General's Title Regulations (2016)*, and approval of the sufficiency of title must be obtained as

required by 40 U.S.C. § 3111.

Conveyance and Environmental Covenant for Manhattan Marsh Property

12.     Within 30 days following the date of entry of the Consent Decree, the City shall

enter into a contract with Metroparks, in substantially the same form as Appendix G, for

Metroparks to conduct the Manhattan Marsh Restoration Statement of Work and the Trustee

approved Restoration Work Plan for the Manhattan Marsh Restoration Project, and submit the

contract to the Trustees for review and approval. Within 90 days after approval of the

Restoration Work Plan, the City shall commence conveying or causing to be conveyed in fee

simple to Metroparks, the real properties described in Appendix E that will comprise the

Manhattan Marsh Property, which will be at least 50 acres in total. All conveyances to

Metroparks shall be completed within one year of the approval of the Restoration Work Plan.  At

the time of each conveyance, the deed for such conveyance shall be subject to an environmental

covenant naming the City of Toledo as a holder that will require Metroparks to protect the

Manhattan Marsh Property as parkland pursuant to Section 1545.11 of the Ohio Revised Code.

Each environmental covenant shall run with the land and preserve the natural resources and the

ecological services in the real properties comprising the Manhattan Marsh Property in perpetuity,

in accordance with Section 5301.89 of the Ohio Revised Code.  Each environmental covenant

shall state that the land shall be used and managed to conserve and enhance the native

populations and habitats of fish, wildlife, and plants and shall not be used for residential or

commercial development.  Each environmental covenant shall provide that the State and its

designees, and DOI and its designees, as Trustees for the injured natural resources, shall have

third-party rights of enforcement with regard to the Manhattan Marsh Property.  In addition, for

all parcels that comprise the Manhattan Marsh Property owned by Metroparks prior to the

Effective Date of the Consent Decree, the City shall subject such parcels to an environmental

covenant.  Within 60 days following the Effective Date, the City shall submit to the Trustees for

approval a draft environmental covenant governing each such parcel.  For those conveyances

occurring after the Effective Date of the Consent Decree, the City shall submit to the Trustees for

approval a draft environmental covenant subjecting the property to be conveyed in such deed or

deeds.  The proposed draft environmental covenants shall be in substantially the same form as

the environmental covenant attached as Appendix F.  Within 30 days after approval of any draft

environmental covenant submitted to the Trustees, the City shall present the approved

environmental covenant signed by Metroparks, or the City as applicable, to the State and FWS

for signature.  The City shall cause the environmental covenant and/or the deed to be recorded in

the County Recorder's office of the County in which the Manhattan Marsh Property is situated and shall provide file-stamped copies to the Trustees within 60 days of recording.

13.    The City shall be responsible under this Consent Decree for any violation or breach of the environmental covenant and for the correction of any such violation or breach.

14.    At any time following the Trustees' approval of the Restoration Work Plan, the City may commence restoration in accordance with the approved Restoration Work Plan.  All work, other than maintenance of the Manhattan Marsh Property, shall be completed within five years from the approval of the Restoration Work Plan.

15.    Where implementation of any portion of either Restoration Project requires a federal, State or local permit, certification or approval, the City shall ensure timely and complete applications are submitted and shall take all other steps necessary to obtain such permit, certification or approval.  This Consent Decree is not and shall not be construed to be a permit issued pursuant to any federal or State statute or regulation, nor shall it be construed in any way to affect any past, current or future obligations of the City, or any other person or entity, to comply with any federal, State or local law.

16.    <u>Completion of the Manhattan Marsh Restoration Project</u>.  Within 60 days after the City concludes that the Manhattan Marsh Restoration Project has been completed in accordance with the Restoration Work Plan and Manhattan Marsh Restoration Statement of Work, the City shall schedule and conduct an inspection to be attended by the City and the Trustees.  If, after the inspection, the City still believes that the Manhattan Marsh Restoration Project has been completed in accordance with the Restoration Work Plan and Statement of Work, it shall submit to the Trustees for approval a Restoration Completion Report.  The Restoration Completion Report shall include a detailed description of all activities performed by the City on the

Manhattan Marsh Restoration Project and shall include as-built drawings, signed and stamped by a professional engineer, for any construction undertaken pursuant to the approved Restoration Work Plan and Manhattan Marsh Restoration Statement of Work.

a.      The Restoration Completion Report shall state whether the City fully implemented all provisions of the approved Restoration Work Plan and Manhattan Marsh Restoration Statement of Work and provide a description of the Restoration Work Plan provisions not completed by the City.  The Restoration Completion Report shall include a statement, signed by the City's Project Coordinator, affirming that all restoration activities undertaken by the City pursuant to this Section were performed in accordance with approved Restoration Work Plan and Manhattan Marsh Restoration Statement of Work and all other requirements of this Consent Decree.

b.      The Restoration Completion Report shall contain the following statement, signed by the City's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

## VII.    REVIEW AND APPROVAL OF WORK PLANS AND OTHER SUBMISSIONS

17.     After review of any work plan, draft deed, report, or other item submitted for approval pursuant to this Consent Decree, the Trustees shall:  (a) approve the submission in whole or in part; (b) approve the submission upon specified conditions; (c) modify the submission to cure any deficiencies; (d) disapprove, in whole or in part, the submission, directing the City to modify the submission; or (e) any combination of the above.

18. Following approval, approval upon conditions, or modification by the Trustees of the Restoration Work Plan or other submittal pursuant to the preceding Paragraph, the City shall proceed to take any action required by the Restoration Work Plan, or other submittal, as approved or modified by the Trustees, subject only to any right of the City to contest such disapproval or modification under Section XII (Dispute Resolution).

19. Resubmission of Plans.

a. Upon receipt of a notice of disapproval pursuant to Paragraph 17(d), the City shall, within 60 days or such longer time as specified by the Trustees in such notice, correct the deficiencies and resubmit the plan(s), report(s), or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XIII, shall accrue during the 60-day or longer period specified in such notice, but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraph 21.

b. Notwithstanding the receipt of a notice of disapproval of the Restoration Work Plan or other submission pursuant to Paragraph 17(d), the City shall proceed, at the direction of the Trustees, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve the City of any liability for stipulated penalties under Section XIII (Stipulated Penalties).

20. In the event that a resubmitted Restoration Work Plan or other submission, or portion thereof, is disapproved by the Trustees, the Trustees may again require the City to correct the deficiencies in accordance with the preceding Paragraphs. The Trustees also retain the right to modify or develop the resubmitted Restoration Work Plan or other submission. The City shall implement the Restoration Work Plan or any other submission as modified or developed by the

Trustees, subject only to the right of the City to invoke the procedures set forth in Section XII (Dispute Resolution).

21.     If upon resubmission, a plan, report, or item is disapproved or modified by the Trustees due to a material defect, the City shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the City invokes the dispute resolution procedures set forth in Section XII (Dispute Resolution) and the Trustees' action is overturned pursuant to that Section.  The provisions of Section XII (Dispute Resolution) and Section XIII (Stipulated Penalties) shall govern the implementation of the work and accrual and payment of any stipulated penalties during dispute resolution.  If the Trustees' disapproval or modification is upheld, stipulated penalties shall accrue for such violation as provided in Section XIII.

22.     The Restoration Work Plan and all other items required to be submitted to Trustees for approval under this Consent Decree shall, upon approval or modification by the Trustees, be enforceable under this Consent Decree.  In the event the Trustees approve or modify a portion of a plan, report, or other item required to be submitted to the Trustees under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## VIII.   PAYMENTS FOR PAST ASSESSMENT COSTS, RESTORATION ACTIVITIES, AND OVERSIGHT OF NATURAL RESOURCE RESTORATION ACTIVITIES

23.     <u>Payments by the City for Past Assessment Costs</u>.  The City shall reimburse the Trustees a total of $420,000 for the Trustees' Past Assessment Costs as set forth below.

a.     <u>Payment to the United States</u>.  The City shall pay a total of $280,000 for the United States' Past Assessment Costs no later than 60 days following the Effective Date. The City shall make each such payment due to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT

procedures, referencing DOJ Case Number 90-11-3-09090/2.  Payment shall be made in

accordance with instructions provided to the City by the Financial Litigation Unit of the United

States Attorney's Office for the Northern District of Ohio following lodging of the Consent

Decree.  Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will

be credited on the next business day.  The money paid to the United States shall be deposited in

the DOI NRDAR Fund, in reimbursement of DOI's Past Assessment Costs.

      b.    <u>Payment to State</u>.    The City shall pay a total of $140,000 to the State in

reimbursement of the State's Past Assessment Costs no later than 60 days following the Effective

Date.  The payment shall be made in the form of an EFT to the Treasurer, State of Ohio, pursuant

to instructions provided by the State, referencing the Ottawa River NRD claim.  A copy of the

EFT  transmittal shall be sent to: Steven Snyder or his successor, DERR Fiscal Officer, Ohio

EPA, P.O. Box 1049, Columbus, Ohio 43216-1049; and to Sandra Finan, Paralegal, or her

successor, Environmental Enforcement Section, Ohio Attorney General's Office, 30 East Broad

Street, 25th Floor, Columbus, Ohio 43215.  The money shall be deposited in the Hazardous

Waste Clean-up Fund, in reimbursement of Ohio EPA's Past Assessment Costs.

      24.    <u>Payments by the City for Future Oversight Costs</u>.  The City shall pay for the

reasonable cost of the Trustees' oversight of the Restoration Projects described in Section VI.

The City shall reimburse the United States for its reasonable future Oversight Costs within 60

(sixty) days of receipt of a cost summary of its actual costs and expenses, and shall reimburse the

State for its reasonable future Oversight Costs within 60 (sixty) days of receipt of a cost

summary of the State Trustee's actual costs and expenses.  Each cost summary shall provide the

hours worked by each Trustee representative and detail any expenses incurred.  Such future

Oversight Costs will be billed once per year for each Trustee, and shall be paid in the same

manner as described in Paragraphs 23.a. for the United States and 23.b. for the State above.

      25.    <u>Payment to the United States for Pump Station Property Restoration.</u>  Within 30

days after the conveyance of the Dike Property, the City shall deposit $50,000 in a segregated

sub-account within the NRDAR Fund for the joint benefit of the Trustees to pay for the

restoration of the Pump Station Property consistent with Section 3.3.2 of the Ottawa River

Restoration Plan.  Such payment shall be paid in the same manner as described in Paragraph

23.a. above.

      26.    <u>Notice of Payment</u>.  Upon making payments required under this Section, the Party

making the payment shall send to the following addressees written notice that payment has been

made:

    <u>For notice to the United States</u>:

        Chief, Environmental Enforcement Section
        U.S. Department of Justice
        P.O. Box 7611
        Washington, DC 20044-7611
        Ref.  DJ # 90-11-2-210/1

        U.S. Department of the Interior
        Natural Resource Damage Assessment and Restoration Program
        Attn:  Restoration Fund Manager
        1849 C Street, NW
        Mailstop 3548
        Washington, DC 20240

        U.S. Department of the Interior
        Office of the Solicitor
        Three Parkway Center, Suite 385
        Pittsburgh, PA 15220
        Attention:  Kimberly Gilmore

For notice to the State:

> Fiscal Officer
> DERR
> Ohio EPA
> P.O. Box 1049
> Columbus, Ohio 43216-1049
> > ATTN: Steven Snyder or his successor
>
> Sandra Finan
> Paralegal
> Environmental Enforcement Section
> Ohio Attorney General's Office
> 30 East Broad Street - 25th Floor
> Columbus, Ohio 43215

27.     In the event that the City does not make any payment required by this Section VIII when due, it shall pay Interest on the unpaid balance commencing on the payment due date and accruing through the date of full payment.  Any payments pursuant to this Paragraph shall be in addition to any other remedies provided by this Consent Decree for failure to make timely payments required under this Section.

## IX.     ACCESS TO RESTORATION PROPERTIES; INFORMATION AND DOCUMENT RETENTION

28.     Commencing on the Lodging Date of this Consent Decree and at all times thereafter until termination of the Consent Decree, the City shall provide the Plaintiffs and their representatives access at all reasonable times to the properties where the Manhattan Marsh Restoration Project and the Pump Station Restoration Project are taking place upon presentation of credentials, and allow Plaintiffs and their representatives to move about, without restriction, for the purposes of conducting any activity related to this Consent Decree, including but not limited to monitoring implementation of the Restoration Projects, verifying any data or information submitted to the Plaintiffs under this Consent Decree, and assessing the City's compliance with this Consent Decree.

29.	All rights of access pursuant to this Section IX shall be in addition to, and shall not limit, any access rights afforded by any law, rule, or regulation.

30.	The City shall provide to Plaintiffs, upon request, copies of all documents and information within their possession or control (or that of their contractors or agents) relating to compliance with this Consent Decree.  The City shall also make available to Plaintiffs their employees, agents, or representatives with knowledge of relevant facts concerning their compliance with this Consent Decree.

31.	Until 10 years after the Effective Date, the City shall preserve and retain all records and documents now in its possession or control, or which come into its possession or control, that relate in any manner to:  (i) the claims alleged in the Complaint; or (ii) the City's compliance with this Consent Decree.  At the conclusion of this document retention period, the City shall notify the United States and the State, per Section XVIII and the Chief of the Division of  Environmental Response and Revitalization at 50 East Town Street, Suite 700, Columbus, OH 43215 at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States or the State, the City shall deliver any such records or documents to the United States or the State.

32.	The City may assert that certain documents and information are privileged under the attorney-client privilege or any other privilege recognized by law.  If the City asserts such a privilege in lieu of providing documents, the City shall provide the Plaintiffs with the following: (i) the title of the document; (ii) the date of the document; (iii) the name and title of the author of the document; (iv) the name and title of each addressee and recipient; (v) a description of the contents of the document; and (vi) the privilege asserted by the City.  No documents or

information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

## X.    INDEMNIFICATION

33.    Plaintiffs do not assume any liability by entering into this Consent Decree or by virtue of any activities to be performed by the City under this Consent Decree.  The City shall indemnify, defend, and hold harmless Plaintiffs and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of actions arising from, or on account of, negligent or other wrongful acts or omissions of the City, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.  Further, the City agrees to pay the Plaintiffs all reasonable costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the Plaintiffs based on negligent or other wrongful acts or omissions of the City, its officers, directors, employees, agents, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.  The Plaintiffs shall not be held out as a party to any contract entered into by or on behalf of the City in carrying out activities pursuant to this Consent Decree.  Neither the City nor any contractor hired by it shall be considered an agent of the United States or the State.

34.    The Plaintiffs shall give the City notice of any claim for which the Plaintiffs plan to seek indemnification pursuant to this Section and shall consult with the City prior to settling such claim.

35.    The City waives all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the

State arising from or on account of any contract, agreement or arrangement between the City and any person for performance of the Restoration Projects including, but not limited to, claims on account of construction delays. In addition, the City shall indemnify and hold harmless the Plaintiffs with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement or arrangement between the City and any person for performance of the Restoration Projects, including, but not limited to, claims on account of construction delays.

## XI.    FORCE MAJEURE

36.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of City, of any entity controlled by the City, or of the City's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the City's best efforts to fulfill the obligation. The requirement that the City exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete any requirements of this Consent Decree.

37.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the City shall provide notice by electronic or facsimile transmission to the Trustees, within three days of when the City first knew that the event might cause a delay. Within seven days thereafter, the City shall provide to the Trustees a written notice setting forth: an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to

prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the City's rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the City, such event may cause or contribute to an endangerment to public health, welfare, or the environment. The City shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude the City from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. For purposes of this Section, circumstances known or that should have been known by the City, any entity controlled by the City, or any contractor retained by the City for purposes of this Consent Decree, shall be deemed to be known by the City.

38.    If the Trustees agree that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the Trustees for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If the Trustees do not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the Trustees will notify the City in writing of their decision. If the Trustees agree that the delay is attributable to a force majeure event, the Trustees will notify the City in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

39.    The City may invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution) to contest any decision of the Trustees under this Section, provided that it

shall do so no later than 15 days after receipt of notice of the Trustees' decision. In any such proceeding, the City shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that such the City complied with the requirements of Paragraphs 36 and 37, above. In any case where this burden is carried by the Party asserting the force majeure claim, the delay at issue shall be deemed not to be a violation of the affected obligation of this Consent Decree identified to Trustees and the Court.

## XII. DISPUTE RESOLUTION

40. The dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree; provided, however, that nothing in this Consent Decree shall be construed to authorize the City to dispute any action or determination of the Trustees in selecting or carrying out any natural resource restoration activities or in managing or expending funds pursuant to Section VIII (Payments for Past Assessment Costs, Restoration Activities, and Oversight of Natural Resource Restoration Activities). The procedures set forth in this Section shall not apply to actions by Trustees to enforce obligations of the City that have not been disputed in accordance with this Section.

41. <u>Informal Dispute Resolution</u>. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when the City sends the Trustees a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 45 Days from the date the dispute arises, unless that period is modified by written agreement of the Parties to the dispute. If the Parties cannot resolve a dispute by

informal negotiations, then the position advanced by the Trustees shall be considered binding unless, within 45 Days after the conclusion of the informal negotiation period, the City invokes formal dispute resolution procedures as set forth below.

42. <u>Formal Dispute Resolution</u>. The City shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the Trustees a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the City's position and any supporting documentation relied upon by either the City. The Trustees shall serve their Statement of Position within 45 Days of receipt of the City's Statement of Position. The Trustees' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the Trustees.

a. An administrative record of the dispute shall be maintained by the Trustees and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section. Where appropriate, the Trustees may allow submission of supplemental Statements of Position by the parties to the dispute.

b. The Regional Director of FWS and the Ohio EPA Division of Environmental Response and Revitalization (DERR) Chief or their designees will jointly issue a final decision resolving the dispute based on the administrative record described in Paragraph 42.a. This decision shall be binding upon the City, subject only to the right to seek judicial review pursuant to Paragraph 43.

43. The City may seek judicial review of the dispute by filing with the Court and serving on the Trustees, in accordance with Section XVIII of this Consent Decree (Notices and

Submissions), a motion requesting judicial resolution of the dispute.  The motion must be filed

within 30 Days of receipt of the decision issued pursuant to Paragraph 42.b.  The motion shall

contain a written statement of the City's position on the matter in dispute, including the City's

position concerning the applicable Standard of Review to be applied by the Court pursuant to

Paragraph 45.a or b below, together with any supporting factual data, analysis, opinion, or

documentation, and shall set forth the relief requested and any schedule within which the dispute

must be resolved for orderly implementation of the Consent Decree.

44.     The Trustees shall respond to the City's  motion within the time period allowed

by the Local Rules of this Court.  The City may file a reply memorandum, to the extent permitted

by the Local Rules.

45.     <u>Standard of Review.</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as

otherwise provided in this Consent Decree, in any dispute brought under Paragraph 42 pertaining

to:  (1) the adequacy or appropriateness of implementation schedules; (2) the Trustees' review of

the Restoration Work Plan;  (3) the adequacy of the performance of restoration activities

undertaken pursuant to Section VI of this Consent Decree; and (4) all other disputes that are

accorded review on the administrative record under applicable principles of administrative law,

the City shall have the burden of demonstrating, based on the administrative record, that the

administrative resolution of the dispute by the Regional Director of FWS and the Ohio EPA

DERR Chief, or their designees, is arbitrary and capricious or otherwise not in accordance with

law.

b.     <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in

any other dispute brought under Paragraph 42 the City shall bear the burden of demonstrating

that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

46.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the City under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 51.  If the City does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIII (Stipulated Penalties).

## XIII.    STIPULATED PENALTIES

47.     The City shall be liable to Plaintiffs for stipulated penalties in the amounts set forth below in this Paragraph for failure to comply with the requirements of this Consent Decree specified below, unless excused pursuant to Section XI (Force Majeure).  "Compliance" shall include completion of activities under this Consent Decree or any work plan approved under this Consent Decree in accordance with all applicable requirements of law, this Consent Decree, any applicable Statement of Work, and any plans approved by Trustees pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

a.     The following stipulated penalties shall accrue per violation per day for each failure to submit a timely or adequate Restoration Work Plan pursuant to Paragraph 8:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |

|       |                  |
|-------|------------------|
| $1,500 | 31st day and beyond |

b.      The following stipulated penalties shall accrue per violation per day for each failure to implement the approved Restoration Work Plan in accordance with Paragraphs 9 and 12-16:

| Penalty Per Violation Per Day | Period of Noncompliance |
|-------------------------------|-------------------------|
| $500   | 1st through 14th day   |
| $1,000 | 15th through 30th day  |
| $1,500 | 31st day and beyond    |

c.      The following stipulated penalties shall accrue per violation per day for each failure to implement the land transfer or environmental covenant or Cooperative Management Agreement provisions of Paragraphs 10-11:

| Penalty Per Violation Per Day | Period of Noncompliance |
|-------------------------------|-------------------------|
| $1,000 | 1st through 14th day   |
| $2,000 | 15th through 30th Day  |
| $3,000 | 31st day and beyond    |

d.      The following stipulated penalties shall accrue per violation per day for each failure to make any payment required pursuant to Paragraphs 23-26:

| Penalty Per Violation Per Day | Period of Noncompliance |
|-------------------------------|-------------------------|
| $500   | 1st through 14th day   |
| $1,000 | 15th through 30th day  |
| $1,500 | 31st day and beyond    |

48.      All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the

correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section VII (Review and Approval of Work Plans and Other Submissions), during the period, if any, beginning on the 31st day after the Trustees' receipt of such submission until the date that the Trustees notify the City of any deficiency; (2) with respect to a decision by the Regional Director of FWS and the Ohio DERR Chief or their designees under Paragraph 42.b of Section XII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that the City's reply to Trustees' Statement of Position is received until the date that the Regional Director of FWS and the Ohio EPA DERR Chief or their designees issue a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

49. Following the Trustees' determination that the City has failed to comply with applicable requirements of this Consent Decree, the Trustees may give the City written notification of the same, describing the noncompliance, and a written demand for the payment of the penalties. However, penalties shall accrue as provided in Paragraph 48 above, regardless of whether the Trustees have notified the City of a violation.

50. All stipulated penalties shall be due and payable within 30 days of the City's receipt of a demand for payment of the penalties unless the City invokes the dispute resolution procedures under Section XII (Dispute Resolution). For any noncompliance referred to in Paragraph 47.a - c, above, one-half of the stipulated penalty amount due shall be paid to the

United States, and one-half of the stipulated penalty amount due shall be paid to the State as specified below in this Paragraph. All stipulated penalties pursuant to Paragraph 47.d., above, for failure to make any payments due to the federal Trustee pursuant to Section VIII shall be paid to the United States, as specified in Paragraph 50.a. All stipulated penalties pursuant to 47.d, above, for failure to make any payments to State Trustee pursuant to Section VIII shall be paid to the State as specified in Paragraph 50.b.

a.      All stipulated penalties due to the United States shall be paid by certified or cashier's check made payable to the United States Treasury and sent to the United States Attorney for the Northern District of Ohio:

> 801 West Superior Avenue
> Suite 400
> Cleveland, OH 44113-1852

b.      All stipulated penalties due to the State shall be paid by certified or cashier's checks made payable to "Treasurer, State of Ohio" and sent to Sandra Finan, Paralegal, or her successor at the Office of the Attorney General of Ohio, Environmental Enforcement Section, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215.

c.      Copies of the transmittal letters and checks shall be sent to the United States and to the State in the manner provided by Section XVIII (Notices and Submissions).

51.      Penalties shall continue to accrue as provided in Paragraph 46 during any dispute resolution period, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of the Trustees that is not appealed to this Court, accrued penalties determined to be owing shall be paid to the Trustees within 15 days of the agreement or the receipt of the Trustees' decision;

b.      If the dispute is appealed to this Court and the Trustees prevail in whole or in part, the City shall pay all accrued penalties determined by the Court to be owed to the Trustees within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.      If the District Court's decision is appealed by any Settling Party, the City shall pay all accrued penalties determined by the District Court to be owing to the United States and the State into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the Trustees or to the City to the extent that they prevail.

52.      If the City fails to pay stipulated penalties when due, Plaintiffs may institute proceedings to collect the penalties, as well as Interest.  The City shall pay Interest on the unpaid balance, which shall begin to accrue on the date of a demand for payment made by the Plaintiffs.

53.      The payment of penalties shall not alter in any way the City's' obligation to complete the performance of any tasks required under this Consent Decree.

54.      Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of the City's violation of this Decree or of the statutes and regulations upon which it is based, including but not limited to injunctive relief, and civil and criminal sanctions.  Nor shall anything in this Consent Decree be construed as prohibiting, altering, or in any way limiting the ability of the DOI, FWS, or the State to seek any other remedies or sanctions available by virtue of the City's violation of this Decree or of the statutes and regulations upon which it is based.

55.     Notwithstanding any other provision of this Section, each Plaintiff may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued and is payable to it pursuant to this Consent Decree.

### XIV.     COVENANTS BY PLAINTIFFS

56.     <u>United States' Covenants Not to Sue</u>.  In consideration of the actions that will be performed by the City pursuant to this Consent Decree and the payments that will be made to the Plaintiffs under the terms of the Consent Decree, and except as specifically provided in Paragraphs 58 and 59, the United States covenants not to sue or to take administrative action against the City for Natural Resource Damages located within the Ottawa River Assessment Area pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C) or Section 311(f)(4) and (5) of the CWA, 33 U.S.C. § 1321(f)(4) and (5), or federal statutory or state statutory or common law.  These covenants not to sue are conditioned upon the satisfactory performance of the City's obligations under this Consent Decree.  These covenants not to sue extend only to the City and do not extend to any other person.

57.     <u>State's Covenants Not to Sue</u>.  In consideration of the actions that will be performed by the City and the payments that will be made to the Plaintiffs under the terms of the Consent Decree, and except as specifically provided in Paragraphs 58 and 59, the State covenants not to sue or to take administrative action against the City for Natural Resource Damages located within the Ottawa River Assessment Area pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607 (a)(4)(C), Section 311(f)(4) and (5) of the CWA, 33 U.S.C. § 1321(f)(4) and (5), or federal statutory or state statutory or common law.  These covenants not to sue are conditioned upon the satisfactory performance of the City's obligations under this

Consent Decree.  These covenants not to sue extend only to the City and do not extend to any other person.

## XV.    RESERVATION OF RIGHTS BY PLAINTIFFS

58.    <u>General Reservations of Rights</u>.  The covenants set forth in Section XIV (Covenants by Plaintiffs) do not pertain to any matters other than those expressly specified in Paragraphs 56-57, above.  The Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against the City with respect to all other matters.  Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against the City with respect to:

a.    claims based on a failure by the City to meet a requirement of this Consent Decree;

b.    liability for any other damages that are not within the definition of Natural Resource Damages;

c.    liability based on any future releases, discharges, or spills of hazardous substances by the City after the Lodging Date of this Consent Decree, but not including any liability arising from further migration by natural causes of previously released hazardous substances present in the environment of the Ottawa River Assessment Area as of the Lodging Date;

d.    liability for any response costs incurred under CERCLA by the United States or the State in connection with the Ottawa River Assessment Area; and

e.    criminal liability.

59.    <u>Special Reservations Regarding Natural Resource Damages</u>.  Notwithstanding any other provision of this Consent Decree, the Plaintiffs reserve, and this Consent Decree is

without prejudice to, the right to institute proceedings against the City in this action or in a new action seeking recovery of Natural Resource Damages, including costs of damages assessments, based on: (i) conditions in the Ottawa River Assessment Area, previously unknown to the Trustees, that cause or contribute to new or additional injuries to, destruction of, or loss of Natural Resources, or new or additional service losses ("Unknown Conditions"); or (ii) information, previously unknown to the Trustees, received in whole or in part by the Trustees after the Lodging Date which indicates that the releases of hazardous substances at the Ottawa River Assessment Area have resulted in injury to, destruction of, or loss of Natural Resources of a type or future persistence that was unknown to the Trustees after the Lodging Date ("New Information"). For purposes of this Paragraph, the information and conditions known to the Trustees shall include information or conditions referenced in the administrative record supporting the Trustees' 2007 Assessment Plan, or information and conditions contained in, referenced by, listed or identified in records, or relating to the Ottawa River Assessment Area that were in the possession or under the control of the Trustees as of the Lodging Date, regarding injuries, losses, or destruction of Natural Resources, or the services they provide, resulting from such conditions. Finally, each of the following shall not be considered to be an Unknown Condition or New Information within the meaning of this Paragraph: (1) an increase solely in the Trustees' assessment of the magnitude of a known injury to, destruction of, or loss of Natural Resources or in the resulting Natural Resource Damages; or (2) injury to, destruction or loss of Natural Resources arising from re-exposure, re-suspension, or migration by natural causes of hazardous substances known to be present in the sediments at the Ottawa River Assessment Area as of the Lodging Date of the Consent Decree.

## XVI.  COVENANTS BY THE CITY

60.  <u>Covenants Not to Sue By the City</u>.  The City hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to Natural Resource Damages, including payments made under Section VIII of this Consent Decree, or any liability for costs incurred in connection with any response actions undertaken in the Ottawa River Assessment Area pursuant to the Great Lakes Legacy Act, 33 U.S.C. § 1268, *et seq.*,  including but not limited to:  (i) any direct or indirect claims for reimbursement of any payment for Natural Resource Damages based on Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, (ii) any claim against the United States or the State pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, (iii) any claim against the United States or the State pursuant to Section 311 of the CWA, 33 U.S.C. § 1321, or (iv) federal statutory or state statutory or common law relating to Natural Resource Damages or any response actions undertaken in the Ottawa River Assessment Area pursuant to the Great Lakes Legacy Act, 33 U.S.C. § 1268.  These covenants not to sue shall not apply in the event that the United States or the State take administrative action, issue administrative findings and orders, or bring a cause of action against the City for Natural Resource Damages pursuant to the reservations set forth in Paragraphs 58 and 59, above, but only to the same extent and for the same matters, transactions, or occurrences as are raised in the claims asserted by the United States or the State pursuant to such reservations.

61.  <u>Reservations of Rights By the City</u>.  Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The City reserves any and all rights (including, but not limited to, any right to contribution immunity), defenses, claims, demands, and causes of action which it may have with

respect to any matter, transaction, or occurrence relating in any way to the Ottawa River Assessment Area against any person not a Party hereto, including the right to assert and maintain claims against any person for recovery of any costs incurred in connection with any response action undertaken in the Ottawa River pursuant to the GLLA Project.

## XVII.    EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

62.    The Settling Parties agree, and by entering this Consent Decree this Court finds, that the City is entitled, as of the Effective Date of the Consent Decree, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), or other federal law, for matters addressed in this Consent Decree.  For these purposes, the "matters addressed" in this Consent Decree are Natural Resource Damages, as defined herein.

63.    The City agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify, in writing, the United States and the State within 10 days of service of any complaint on it.  In addition, the City shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a Court setting a case for trial.

64.    <u>Waiver of Claim-Splitting Defenses</u>.   In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, or Natural Resource Damages or other relief related to the Ottawa River Assessment Area, the City shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or

should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiffs set forth in Section XIV.

## XVIII.    NOTICES AND SUBMISSIONS

65.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a plan, report or other submission is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree.

**As to the United States**:

> For the Department of Justice:
>
> Chief, Environmental Enforcement Section (DJ #90-11-3-09090/2)
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, DC  20044-7611
>
> For DOI:
>
> Office of the Solicitor
> U.S. Department of the Interior
> Three Parkway Center, Suite 385
> Pittsburgh, PA 15220
>
> Attention:  Kimberly Gilmore

**As to the State**:

> For the Ohio Attorney General's Office:
>
> Elizabeth Ewing or her successor
> Assistant Attorney General
> DERR Unit Supervisor
> Environmental Enforcement Section

Ohio Attorney General's Office
30 East Broad Street - 25th Floor
Columbus, Ohio 43215

For Ohio EPA:

Ohio EPA
Division of Environmental Response and Revitalization
Northwest District Office
347 North Dunbridge Road
Bowling Green, Ohio 43402

ATTN:  Archie L. Lunsey II

**As to the City**:

Director of Law
City of Toledo Law Department
One Government Center--22nd Floor
Toledo, OH 43604


66.    Certification of Notices and Submissions.  All notices and submissions required

by this Consent Decree to be submitted by or on behalf of the City shall be certified by a

responsible official or designated representative of the City, and accompanied by the following

certification:

> I certify that the information contained in or accompanying this submission is true,
> accurate and complete.  This certification is based on my personal preparation, review, or
> analysis of the submission, and/or supervision of persons who, acting on my direct
> instructions, made the verification that the submitted information is true, accurate and
> complete.

## XIX.    TERMINATION

67.    Request for Termination.  The City may serve upon Plaintiffs a Request for

Termination of Consent Decree, together with supporting information, once:  (1) the City has

paid all amounts due pursuant to Paragraphs 23-25, and all accrued stipulated penalties as

required by this Consent Decree; (2) the City has completed all requirements of Section VI

(Restoration Projects); and (3) Trustees have approved the Restoration Completion Reports submitted pursuant to Section VI.

68.     Following receipt by Plaintiffs of any Request for Termination pursuant to the preceding Paragraph, Plaintiffs may confer informally with the City to resolve any question or disagreement concerning whether the City has satisfied the applicable criteria under Paragraph 67 for termination of this Consent Decree.  If Plaintiffs agree that the applicable criteria have been satisfied by the City, Plaintiffs and the City shall submit for the Court's approval a joint stipulation terminating the Decree.

69.     If Plaintiffs do not agree that the City has satisfied the applicable criteria under Paragraph 67 for termination of this Consent Decree, the City may invoke dispute resolution under Section XII of this Decree.  However, the City shall not seek dispute resolution of any dispute regarding termination under Paragraph 42 of Section XII (Dispute Resolution) until 60 days after service of its Request for Termination.

70.     The provisions set forth in Paragraph 31 and in Sections XIV (Covenants by Plaintiffs), XV (Reservation of Rights by Plaintiffs), XVI (Covenants by the City), and XVII (Effect of Settlement/Contribution Protection) will remain enforceable notwithstanding termination of this Consent Decree.

## XX.     PUBLIC COMMENT

71.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days, for public notice and comment in accordance with the provisions of 28 C.F.R. § 50.7.  The United States and the State reserve the right to withdraw or withhold their consent if the comments received disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

## XXI.  EFFECTIVE DATE AND RETENTION OF JURISDICTION

72.     This Consent Decree shall take effect upon entry by the Court; provided, however, that the City shall be bound upon the lodging of this Consent Decree to comply with obligations of the City specified in this Consent Decree as accruing upon lodging.

73.     The Court shall retain jurisdiction to modify and enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree.

## XXII.  APPENDICES

74.     The following Appendices are attached to and incorporated into this Consent Decree:

Appendix A          Map of the Ottawa River Assessment Area

Appendix B          Statement of Work for the Manhattan Marsh Restoration Project

Appendix C          Natural Resource Restoration Plan and Environmental Assessment for the Ottawa River Assessment Area

Appendix D          Cooperative Management Agreement between Toledo and FWS

Appendix E          Manhattan Marsh List of Properties

Appendix F          Environmental Covenant

Appendix G          Contract between Toledo and Metroparks

Appendix H          Map Depicting Dike Property

## XXIII.  CONSENT DECREE MODIFICATIONS

75.     Any material modification of this Consent Decree shall be made by agreement of the Parties to this Consent Decree and in writing, and shall not take effect unless approved by the Court.  Any non-material modification of this Decree shall be made by agreement of the Parties

to this Consent Decree and in writing, and shall not take effect until filed with the Court.
Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise,
or approve modifications to this Consent Decree.

76.     The provisions of this Consent Decree are not severable.  The Parties' consent
hereto is conditioned upon the entry of the Consent Decree in its entirety without modification,
addition, or deletion except as agreed to by the Parties.

77.     Unanticipated or increased costs or expenses associated with the implementation
of actions called for by this Consent Decree and economic hardship or changed financial
circumstances shall not serve as a basis for modifications of this Consent Decree.

## XXIV.     SIGNATORIES/SERVICE

78.     The undersigned representatives of the City, the State, and the Assistant Attorney
General for the Environment and Natural Resources Division of the United States Department of
Justice each certifies that he or she is fully authorized to enter into the terms and conditions of
this Consent Decree and to execute and legally bind such Party to this document.

79.     The City hereby agrees not to oppose entry of this Consent Decree by this Court
or to challenge any provision of this Consent Decree unless the United States or the State has
notified the City in writing that they no longer support entry of the Consent Decree. Authority of
the City is pursuant to Toledo City Council Ordinance No. 132-18 passed on April 26, 2018.

80.     The City shall identify, on the attached signature page, the name, address and
telephone number of an agent who is authorized to accept service of process by mail on their
behalf with respect to all matters arising under or relating to this Consent Decree.  The City
hereby agrees to accept service in that manner and to waive the formal service requirements set
forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this
Court, including but not limited to service of a summons.

## XXV.  FINAL JUDGMENT

81.  Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment between and among the United States, the State, and the

City.


SO ORDERED THIS __30th__ DAY OF __January_____, __2020_____.




       /s/ James G. Carr
_____

       United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree Regarding the Ottawa River
Assessment Area Natural Resource Damages

FOR THE UNITED STATES OF AMERICA:

Date: 03-15-2019

THOMAS A. MARIANI, JR.
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date: 3/18/2019

STEVEN D. ELLIS
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division U.S.
Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

JUSTIN E. HERDMAN
United States Attorney
Northern District of Ohio

Date:

STEVEN PAFFILAS
Assistant United States Attorney
Northern District of Ohio
801 W Superior Ave #400
Cleveland, OH 44113

THE UNDERSIGNED PARTIES enter into this Consent Decree Regarding the Ottawa River Assessment Area Natural Resource Damages

FOR THE STATE OF OHIO

OFFICE OF THE OHIO
ATTORNEY GENERAL
DAVE YOST

Date: 2/15/2019

TIMOTHY J. KERN
Assistant Attorney General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215

THE UNDERSIGNED PARTY enters into this Consent Decree Regarding Ottawa River Assessment Area Natural Resource Damages:

FOR DEFENDANT THE CITY OF TOLEDO, OHIO

Date: 2/15/2019

DALE EMCH
Director of Law
City of Toledo, Ohio

Agent Authorized to Accept Service on Behalf of Above-Signed Party:

Typed Name: Dale R. Emch

Title: Director of Law

Address: One Government Center, Suite 2250

Toledo, Ohio  43604